| | | |
|---|---|---|
| Estado Libre Asociado de Puerto Rico<br>TRIBUNAL DE APELACIONES<br>PANEL ESPECIAL | | |
| MARY LUZ NAZARIO CRUZ<br><br>Parte Recurrente<br><br>v.<br><br>LEE DAVID SANTANA<br><br>Parte Recurrida<br><br>OFICINA DE GERENCIA DE PERMISOS (OGPE)<br><br>Parte con interés | TA2026RA00007 | *Revisión Decisión Administrativa procedente de la Oficina de Gerencia de Permisos (OGPE)*<br><br>Caso núm.: 2025-646620-SDR-303026<br><br>Sobre:<br>Denegatoria Consulta de Construcción |

Panel integrado por su presidenta, la Jueza Rivera Marchand, la Jueza Mateu Meléndez, la Jueza Boria Vizcarrondo y el Juez Robles Adorno.

**SENTENCIA**

En San Juan, Puerto Rico, a 13 de mayo de 2026.

El 8 de enero de 2026, la señora Mary Luz Nazario Cruz (la señora Nazario Cruz o la recurrente) presentó ante nos un *Recurso de Revisión* en el que solicitó que revoquemos la *Resolución de Revisión Administrativa* emitida y notificada el 9 de diciembre de 2025, por la División de Revisiones Administrativas (DRA) de la Oficina de Gerencia de Permisos del Departamento de Desarrollo Económico y Comercio (OGPe).[1]

En el aludido dictamen, la OGPe declaró *No Ha Lugar* la solicitud de revisión administrativa en la que la recurrente cuestionó la determinación de *No Favorable* a la Consulta de Construcción emitida por la OGPe para un proyecto residencial unifamiliar.

Por los fundamentos que expondremos a continuación, confirmamos la *Resolución* recurrida.

---

[1] *Recurso de Revisión*, Anejo 2.

**I.**

El caso de epígrafe tiene su origen el 8 de mayo de 2024, cuando la señora Nazario Cruz, por conducto del ingeniero Juan Castro Lozada (Ing. Castro Lozada), presentó una *Consulta de Construcción* ante la OGPe, para legalizar un proyecto residencial unifamiliar.[2] El objeto de la consulta fue sobre la legalización de la construcción de ampliación de vivienda que implicó variaciones a diferentes parámetros de construcción, tales como: "variación en el área de ocupación, patio delantero, patio posterior, altura máxima en las marquesinas extendidas y longitud máxima de las marquesinas por ser mayor al largo del edificio principal. En particular, las marquesinas extendidas en los laterales derecho e izquierdo, la extensión del balcón en el patio delantero y la creación de una terraza abierta en el patio posterior es una construcción que fue realizada hace más de 8 años sin el permiso correspondiente".

El 3 de diciembre de 2024, el señor Lee D. Santana (el señor Santana o el recurrido) presentó una solicitud de intervención en la que alegó que, la construcción de la recurrente le está ocasionando daños en su propiedad puesto que esta se inunda.[3] Asimismo, adujo que, la señora Nazario Cruz construyó sin los permisos correspondientes.

Consecuentemente, el 9 de abril de 2025, la OGPe emitió *Resolución sobre solicitud de intervención* en la que declaró *Ha Lugar* la solicitud de intervención del recurrido.[4] Surge de la referida *Resolución* que, el señor Santana indicó que, en el mes de junio 2023 radicó ante la Junta de Planificación una querella.[5] En su solicitud de intervención, el señor Santana relató que, la inspectora De Jesús

---

[2] *Íd.*, Anejo 5.

[3] *Íd.*, Anejo 28.

[4] *Íd.*, Anejo 28.

[5] *Íd.*, Anejo 28. La parte recurrida presentó la Querella número 2023-SRQ-013791 con relación a una construcción encima del *closet* de su residencia y verja colindante, construcción de verja frontal en sus predios y desagües de la propiedad vecina que desembocan en su propiedad.

se presentó a su propiedad y le entregó evidencia sobre las construcciones vecinales en cuestión. El señor Santana afirmó que, como resultado de dicha inspección se encontraron varios hallazgos, en particular, que las construcciones no cuentan con los debidos permisos. Expuso en su solicitud de intervención que, estas causas han afectado su propiedad y sana convivencia en la misma ya que las acciones de la recurrente habían provocado la obstrucción del paso de las aguas fluviales. Aseveró que, esta acción provocaba inundaciones en el interior de su propiedad.

El 22 de julio de 2025, la OGPe emitió *Resolución de Consulta de Construcción* en la que consideró *No Favorable* la solicitud sobre Consulta de Construcción.[6] Cabe señalar, en la referida resolución se consignaron una serie de determinaciones de hechos, de las cuales destacaremos las siguientes:

2. Los terrenos objeto de consulta ubican en la calle 1 número K-7, urbanización Villa Aventura del municipio de Yabucoa y cuentan con una cabida de 321.547 metros cuadrados, según escritura sometida.

3. En el caso de referencia obran los siguientes documentos, entre otros, requeridos por el Reglamento Conjunto, los cuales forman parte del expediente digital:
• Evidencia de Titularidad, Sección 2.1.9.5 - Legitimación Activa (Standing).
• Autorización del dueño, Sección 2.1.9.5.
• Memorial Explicativo, Tabla de Parámetros conforme al Distrito en el que ubica.
• Foto del Rótulo, Sección 2.1.9.12.
• Declaración Jurada de Rótulo de acuerdo al Artículo 9.9 de la Ley 161 - 2009, según enmendada.
• Lista Certificada de Colindantes, Sección 2.2.2.1.
• Notificación a los colindantes inmediatos de la propiedad donde se propone la acción, mediante correo certificado, Sección 2.2.2.2.

5. La parte proponente justifica su propuesta indicando que el balcón fue ampliado hacia el patio delantero para mejorar comodidad y fachada de la estructura, en el sector existen otras propiedades invadiendo el patio delantero. [...] El exceso se debe a que se instaló un techo en galvalum a la terraza. La terraza se usa para como área de esparcimiento, la misma no impide la ventilación e iluminación a los colindantes debido a su altura. Se establecen alturas sobre las máximas permitidas con el propósito que la ventilación circulara de forma normal y la iluminación no se interrumpiera a propiedades colindantes. Las marquesinas extendidas sobrepasaron el límite buscando conseguir el área necesaria para un

---

[6] *Íd.*, Anejo 5.

medio baño, *laundry*, cuarto de desahogo y la ocupación de 2 vehículos pesados y 3 vehículos convencionales. [...] La construcción es para albergar los vehículos mencionados para que no estén en la calle evitando afear el área de la calle. Que existe una querella por problemas personales entre vecinos, la construcción fue realizada hace más de 8 años. Que las variaciones solicitadas no afectan adversamente: la seguridad; tranquilidad; disponibilidad de infraestructura; el ambiente de la calle. Que lo propuesto redunda en aumento de valor de la estructura y no existe prejuicio a las propiedades cercanas. Solicitan acomodo razonable al amparo de la Ley ADA debido a que la terraza es usada diariamente por la paciente de alzhéimer que vive en la propiedad (hija de la dueña) [...].

6. El predio objeto de consulta está calificado como R-I (Residencial Intermedio), y clasificado como SU (Suelo Urbano), según el Plan Territorial de Yabucoa, vigente.

7. El predio ubica dentro de la Zona X de acuerdo con la Hoja Núm. 72000C1805J de los Mapas de Niveles de Inundación Base Recomendados, con vigencia del 13 de abril de 2018, y conforme Determinación Número 2024-00-JDI-3992, expedida por la Junta de Planificación el 11 de marzo de 2024.

8. De conformidad con las disposiciones contenidas en las leyes y los reglamentos vigentes, la Oficina de Gerencia de Permisos (OGPe) expidió una Certificación de Cumplimiento Ambiental por Exclusión Categórica, mediante la Certificación Núm. 2024-572947-DEC-304558 del 6 de mayo de 2024.

9. El proyecto propuesto se ilustra gráficamente en el juego de planos preparado por el Ing. Juan Castro Lozada.

10. [Se presentan: Tabla de Parámetros permitidos y propuestos para el proyecto propuesto, sometido por la parte proponente. Tabla de parámetros para marquesina extensión lateral izquierdo. Tabla de parámetros para marquesina extensión lateral derecho.]

11. Para esta consulta de construcción existe una querella con el número 2023-SRQ-013791, radicada el 2 de junio de 2023 por Lee D. Santana, donde se indica lo siguiente: "1. CONSTRUCCION DE MARQUESINA SOBRE CLOSET Y VERJA COLINDANT DE MI RESIDENCIA; 2. OBSTRUCCION DE AGUAS FLUVIALES, DEBIDO A CONSTRUCCION DE VERJA".

12. Para esta consulta de construcción existe una Solicitud de Intervención con número 2024-SIN-300405, radicada por Lee D. Santana [...].

Así pues, concluyó que, la recurrente no cumplió con los requisitos aplicables para la presentación de Solicitudes de Servicio y para la Presentación de Asuntos Discrecionales. La OGPe determinó que, el presente proyecto se tramitó como una Consulta de Construcción dado que hubo variaciones fuera de los parámetros de construcción aplicables y afectan el disfrute y el valor de las propiedades vecinales. Con ello, tal como la solicitud de variación en altura de una marquesina toda vez que, la misma mide 15 pies.

Apoyados en esta premisa resolvió que, la construcción residencial no es cónsona con los parámetros del sector en que está ubicada. Ello, pues la altura es característica de estructuras industriales y no residencial. Además, la OGPe denotó que, la estructura está en incumplimiento con el Artículo 801 del Código Civil, 31 LPRA sec. 8064, con relación a los desagües. En fin, la OGPe concluyó que, las variaciones que presenta el Proyecto no fueron debidamente solicitadas ni justificadas según dispone la Sección 6.3.2.2 del Reglamento Conjunto, *supra*. Añadió que, no se cumplió con los criterios establecidos en la Sección 6.3.2.4 del citado Reglamento, *supra*, para conceder una variación en construcción al no demostrar, entre otros, que las variaciones solicitadas no afectarían adversamente el disfrute y valor de las pertenencias cercanas en el uso presente y para cualquier otro uso futuro permitido.

Insatisfecha, el 11 de agosto de 2025, la señora Nazario Cruz presentó un *Recurso de Revisión* ante la OGPe en la que alegó que, las variaciones de construcción eran de carácter menor.[7] En su solicitud, la recurrente planteó que, las variaciones solicitadas y justificadas se ajustaron a la exigencia reglamentaria mediante prueba fehaciente que consta en el expediente. En esa línea, adujo que, la variación en longitud de la marquesina era "para usos accesorios permitidos por la referida reglamentación", destinados a una mejor comodidad para la madre de la recurrente, la cual padece de Alzheimer. Igualmente, dicha variación permite estacionar vehículos en la marquesina. La recurrente argumentó que, el alegado problema de desagüe de aguas no perjudicaba el predio del señor Santana toda vez que, su queja se debía a riñas de vecinos. Por ende, solicitó que se le permita presentar prueba que justifique

---

[7] *Recurso de Revisión*, Anejo 1. Se identificó bajo el número de trámite 2025-646620-SDR-303026.

la necesidad de la variación mediante la celebración de una vista administrativa.

El 27 de agosto de 2025, la OGPe emitió una *Notificación acogiendo solicitud de revisión administrativa* en la que le informó que acogió el recurso de revisión administrativa.[8]

Por otro lado, el 3 de septiembre de 2025, el recurrido presentó una *Moción Solicitando Intervención y en Oposición a Solicitud de Revisión Administrativa* en la que arguyó que no debía permitirse las variaciones de construcción puesto que dicha construcción conllevaría alterar el distrito asignado con relación a la ubicación de la residencia.[9] Además, sostuvo que, las variaciones han afectado adversamente el disfrute y el valor económico de la propiedad del recurrido. Asimismo, adujo que, autorizar la variación atentaría contra los estatutos aplicables. Indicó que, las obras realizadas, sin permiso de construcción, cubren en su totalidad, "el patio posterior, el patio lateral derecho e izquierdo, que mantiene una terraza abierta en el patio posterior y, extensión y longitud excesiva, contraria al reglamento aplicable". Consecuentemente, argumentó que no se justificaba la celebración de una vista administrativa.

En respuesta, el 10 de septiembre de 2025, la señora Nazario Cruz presentó una *Solicitud Vista Administrativa*, en la que reiteró su solicitud de la celebración de una vista administrativa en aras de garantizar su debido proceso de ley, su derecho a confrontar y rebatir las alegaciones de la recurrida.[10]

Así las cosas, el 10 de octubre de 2025, la OGPe emitió un *Aviso de Vista de Revisión Administrativa* en la que le notificó a las partes la celebración de una vista administrativa para el 29 de

---

[8] *Íd.*, Anejo 30.
[9] *Íd.*, Anejo 31.
[10] *Íd.*, Anejo 32.

octubre de 2025.[11] Así las cosas, durante la vista administrativa, el señor Gilberto Rivera Flores (el señor Rivera Flores), esposo de la recurrente, indicó que llevaba residiendo, en la propiedad que colinda con la residencia del señor Santana, durante veinte tres (23) años.[12] En su testimonio expresó que, fue él quien construyó en la residencia una verja medianera de seis (6) pies y seis (6) pulgadas en el lado derecho de la propiedad.[13] Además, admitió que, subió la altura de la marquesina en el lado de su propiedad y cerró la misma, la cual mide quince (15) pies de altura.[14] Con relación a las ampliaciones, esbozó que, la propiedad cuenta con dos (2) marquesinas que se utilizan para vehículos.[15] La marquesina de la izquierda tiene adyacente un *laundry* y una terraza.[16] El señor Rivera Flores declaró que, elevó su verja a ocho (8) o nueve (9) pies de altura, sin la obtención de un permiso.[17] Por otro lado, expresó que, la marquesina tiene quince (15) pies de altura debido a que la emplea para guardar un camión.[18]

Por otro lado, durante su testimonio, el ingeniero Juan Ramón Castro Lozada (Ing. Castro Lozada) explicó que la recurrente le solicitó la legalización de las construcciones que habían sido realizadas sin permiso.[19] De modo que, el testigo realizó inspecciones de campo en la residencia y en el área para saber el comportamiento del sector.[20] Como parte de sus hallazgos, estructuralmente, encontró que había dos (2) marquesinas extendidas, una de quince (15) pies de altura con una caída hasta doce (12) pies de altura.[21] Mientras la otra marquesina se había

---

[11] *Íd.*, Anejo 34.
[12] Transcripción de la Prueba Oral (TPO) de la vista administrativa celebrada el 29 de octubre de 2025, pág. 16; líneas 3-22.
[13] *Íd.*, pág. 18-19, 21; líneas 9-49, 42-45, 12-21.
[14] *Íd.*, pág. 22; líneas 5-35.
[15] *Íd.*, pág. 59-60; líneas 31-52, 4-8.
[16] *Íd.*, pág. 59; líneas 47-50.
[17] *Íd.*, pág. 65; líneas 36-50.
[18] *Íd.*, pág. 66-67; líneas 30-51, 1-9.
[19] *Íd.*, pág. 76; líneas 29-31.
[20] *Íd.*, pág. 76-77; líneas 33-40, 1-18.
[21] *Íd.*, pág. 77; líneas 20-43.

extendido para incluir un *laundry*, medio baño y un cuarto de desahogo.[22] El señor Rivera Flores aclaró que presentó ante la OGPe los planos preparados, certificaciones, memorial explicativo y tabla de parámetros, en donde, además, justificó las variaciones.[23] También, presentó la solicitud de declaración de exclusión categórica.[24] Durante su testimonio, justificó las variaciones presentando fotos y un estudio del sector en el que indicaba que había varias propiedades en el área que incluían variaciones similares en patios laterales, posteriores y delanteros.[25]

Luego, el Ing. Castro Lozada detalló las variaciones solicitadas: en el patio delantero se extendió un balcón;[26] en el patio lateral derecho hay una marquesina, la cual fue extendida para establecer un *laundry* y un medio baño, que sobrepasó el límite de la estructura principal; en la parte posterior se construyó una terraza techada en galvalum, estilo catedral;[27] en el patio lateral izquierdo se construyó una marquesina con quince (15) pies de altura que baja a doce (12) pies;[28] el área de ocupación es de 80%.[29] Sobre la altura de la marquesina, explicó que entiende que es una variación menor ya que no toda la marquesina mide quince (15) pies, sino que, solo mide dicha altura en el medio.[30]

El Ing. Castro Lozada declaró que, las variaciones no aumentan el uso ni perjudican la infraestructura existente.[31] Según su testimonio, existen cuarenta y cuatro (44) parámetros para el distrito R-I y solamente no cumplen con seis (6).[32] Por otro lado, indicó que, los desagües de la propiedad dan para el frente de la

---

[22] *Íd.*, líneas 33-37.
[23] *Íd.*, pág. 78; líneas 1-9.
[24] *Íd.*, líneas 30-33.
[25] *Íd.*, líneas 35-44.
[26] *Íd.*, pág. 79; líneas 4-10.
[27] *Íd.*, pág. 80; líneas 4-17.
[28] *Íd.*, pág. 82; líneas 21-24.
[29] *Íd.*, pág. 84; líneas 33-38.
[30] *Íd.*, pág. 82-83; líneas 43-50, 1-7.
[31] *Íd.*, pág. 84; líneas 14-24.
[32] *Íd.*, pág. 85-86; líneas 35-51, 1-6.

estructura y no para los laterales, por lo que no afecta propiedades vecinas.[33] Que, el uso y disfrute de la propiedad estuviese limitado sin las variaciones.[34] Asimismo, aseveró que las variaciones no van en detrimento de los vecinos colindantes.[35] Señaló que, las estructuras que observó en la zona, si bien también tienen variaciones a los parámetros del distrito R-I, desconoce si son construcciones ilegales.[36]

Por último, el señor Santana testificó que, es el vecino colindante, expresó que lleva residiendo en la propiedad desde 2021.[37] Además, declaró sobre un video que se presentó en sala, que muestra el agua que discurre del techo de la marquesina de la parte recurrente a su propiedad.[38] No obstante, sostuvo que, la recurrente tapó el desagüe con cemento.[39] Ahora bien, el testigo aclaró que el agua que discurre del techo de galvalum continúa cayendo en su residencia.[40] Según expresó, debido a que el agua cae en su residencia, la misma se inundó en tres (3) ocasiones.[41]

Tras diversos incidentes procesales, el 31 de octubre de 2025, la OGPe presentó *Moción en Cumplimiento de Orden* en la que argumentó que de la prueba presentada surge que las ampliaciones ejecutadas sin permisos son intensas e interfieren de manera perjudicial con el uso y disfrute del colindante.[42] Además, que la señora Nazario Cruz no presentó prueba nueva durante la vista que colocara al juzgador en posición de concluir que la OGPe erró al denegar la consulta de construcción.

Por su parte, el 3 de noviembre de 2025, la recurrente radicó un *Memorando de derecho* en la que sostuvo que la OGPe otorgó

---

[33] *Íd.*, pág. 86; líneas 23-39.
[34] *Íd.*, pág. 93-94; líneas 24-52, 10-14.
[35] *Íd.*, pág. 94; líneas 16-30.
[36] *Íd.*, pág. 97; líneas 7-43.
[37] *Íd.*, pág. 107; líneas 4-10.
[38] *Íd.*, pág. 117; líneas 18-27.
[39] *Íd.*, pág. 119; líneas 6-9.
[40] *Íd.*, líneas 11-41.
[41] *Íd.*, pág. 123-124; líneas 42-52, 1-12.
[42] *Recurso de Revisión*, Anejo 37.

gran peso a las alegaciones del recurrido sobre su derecho a servidumbres de aguas y medianería según dispuesto en el Código Civil, *supra*.[43] Esto, sin ningún tipo de evidencia y sin poseer la jurisdicción para adjudicar tales derechos. Argumentó que, su derecho fue restringido, sin brindar las garantías mínimas exigidas por el ordenamiento jurídico, al denegarse la consulta de construcción teniendo el efecto legal de proceder la demolición de esta, lesionando gravemente su derecho propietario.

Por otro lado, el 1 de noviembre de 2025, el señor Santana presentó un *Memorando de derecho en cumplimiento de orden* en el que arguyó que, no surge evidencia que demuestre un error de tipo sustantivo o procesal que haya convertido la determinación impugnada en una contraria a derecho.[44] Igualmente, razonó que, la señora Nazario Cruz no demostró la existencia de nueva evidencia pertinente y esencial al caso, cuya admisibilidad haga más probable una determinación contraria a la tomada por la OGPe.

Consecuentemente, el 9 de diciembre de 2025, la Division de Revisiones Administrativas emitió una *Resolución de Revisión Administrativa*.[45] Luego de evaluar el expediente administrativo, se establecieron las siguientes determinaciones de hechos:

1. El 8 de mayo de 2024, la Sra. Mary Luz Nazario Cruz p/c Ing. Juan Castro Lozada, presentó una consulta de construcción ante la OGPe bajo el trámite 2024-572947-CCO-014556.
2. El proyecto ubica en la Calle 1 K-7, Urb. Villa Aventura, en el Municipio de Yabucoa, Puerto Rico.
3. El proyecto se encuentra en un distrito calificado como Residencial Intermedio (R-I), según el Plan de Uso de Terrenos de Puerto Rico vigente del 2015.
4. En el Memorial Explicativo que obra en el expediente del caso número 2024-572947-CCO-014556, se indicó lo siguiente:
   […] [citas omitidas]
   SE SOLICITA VARIACION EN:
   A. AREA DE OCUPACION YA QUE SE REQUIERE 60% Y SE PROPONE 81.48%.

---

[43] *Íd.*, Anejo 35.
[44] *Íd.*, Anejo 36.
[45] *Íd.*, Anejo 2.

B. PATIO DELANTERO YA QUE SE REQUIERE 3.0 MTS. Y SEP ROPONE 2.74 MTS.

C. PATIO POSTERIOR YA QUE SE REQUIERE 3.0 MTS. Y SE PROPONE 0 MTS.

D. ALTURA MAXIMA EN LAS MARQUESINAS EXTENDIDAS EN LOS LATERALES DERECHO E IZQUIERDO YA QUE SE REQUIERE 13 PIES Y SE PROPONE 15 PIES.

E. LONGITUD MAXIMA DE LAS MARQUESINAS EXTENDIDAS EN LOS LATERALES DERECHO E IZQUIERDO, YA QUE SE REQUIERE QUE NO SEA MAYOR DEL LARGO DEL EDIFICIO PRINCIPAL Y SE PROPONE UNA LONGIRUD MAYOR AL EDIFICIO PRINCIPAL. [...]

5. El 3 de diciembre de 2024, el Sr. Lee D. Santana presentó una Solicitud de Intervención ante la OGPe, bajo el trámite 2024-SIN-300405.

6. El 9 de abril de 2025 la OGPe emitió la Resolución sobre Solicitud de Intervención para el caso 2024 SIN-300405 declarando Ha Lugar la solicitud de intervención del señor Santana.

7. El 22 de julio de 2025, la OGPe emitió la Resolución de Consulta de Construcción para el caso 2024 572947-CCO-014556. En la misma, la OGPe determinó lo siguiente:

[...] CONCLUSIONES DE DERECHO

[...] [L]as variaciones que presenta el Proyecto son muy intensas para el área residencial en que ubica y no fueron debidamente solicitadas ni justificadas según dispone la Sección 6.3.2.2. La parte proponente no cumplió con los criterios establecidos en la Sección 6.3.2.4 para que se autorice una variación en construcción al no demostrar, entre otros, que las variaciones solicitadas no afectarán adversamente el disfrute y valor de las pertenencias cercanas en el uso presente y para cualquier otro uso futuro permitido.

DETERMINACIÓN Y TERMINOS DE REVISION

[E]l Secretario Auxiliar consideró NO FAVORABLE la solicitud número 2024-572947-CCO 014556, sobre Consulta de Construcción para un proyecto residencial unifamiliar según descrito en la Determinación de Hecho #1 y que ubica en la calle 1 K-7, urb. Villa Aventura del municipio de Yabucoa. [...]

8. Inconforme con la determinación de la OGPe, la señora Nazario Cruz presentó un Recursos de Revisión en contra de la Resolución de Consulta de Construcción para el caso 2024-572947-CCO 014556. La misma fue identificada bajo el número de trámite 2025-646620-SDR-303026. El recurso fue presentado el 11 de agosto de 2025. [...]

9. El 27 de agosto de 2025, se emitió una Notificación acogiendo la solicitud de revisión administrativa.

10. El 14 de octubre de 2025, se emitió el Aviso de Vista de revisión Administrativa para el 29 de octubre de 2025, a las 9:30am, a través de la plataforma Microsoft Teams (Microsoft 360). Es menester destacar que en el Señalamiento de Vista también se determinó prorrogar el término para adjudicar la solicitud por treinta (30) días, hasta el 9 de diciembre de 2025.

11. El 29 de octubre de 2025 se celebró la vista de revisión administrativa para el caso 2025-646620-SDR 303026. La misma fue presidida por el Lcdo. Efraín E. Del Valle

Rosario, como Oficial Examinador. A la vista administrativa compareció la Sra. Mary Luz Nazario Cruz, por conducto del Lcdo. Antonio Pita Matienzo. Asimismo, compareció el Sr. Gilberto Rivera, esposo de la parte Recurrente, y el Ing. Juan Castro Lozada, quien es el proyectista. Por la parte Recurrida compareció el Lcdo. Israel Pagán Velázquez. A su vez, compareció Lee David Santana, quien es la parte Interventora, junto a su representación legal, el Lcdo. Jorge Ramos.

12. La parte Recurrente presentó un planteamiento de umbral a los efectos de indicar que la División carece de jurisdicción para atender cuestiones de derecho relacionadas a servidumbres de desagües y sobre asuntos de medianería, ya que estas controversias son jurisdicción de los tribunales de justicia. Ante ello, la parte Interventora expresó que dichos asuntos inciden en el proyecto propuesto en la consulta de construcción que se encuentra en controversia, y el cual fue evaluado por la OGPe. Añadió que la construcción propuesta en la consulta de construcción 2024-572947-CCO-014556 no cumple con los parámetros establecidos para el distrito de calificación. Asimismo, expresó que las variaciones solicitadas son sumamente intensas.

13. Posteriormente, la parte Recurrente presentó al señor Rivera como testigo.
[citas omitidas]
Su testimonio también incluyó declaraciones sobre construcciones realizadas por el vecino, incluyendo desagües que caen dentro de su propiedad, las cuales no son parte de la consulta de construcción 2024-572947-CCO-014556, pues estas condiciones y estructuras son de la propiedad vecina. Por tal razón, no las incluiremos.

14. Como segundo testigo de la parte Recurrente, se presentó el Ing. Juan Castro Lozada como testigo perito.
[citas omitidas]

15. La parte Recurrida no presentó prueba documental ni testifical.

16. La parte Interventora presentó el testimonio de Lee David Santana.
[citas omitidas]

17. Posteriormente, la parte Recurrente e Interventora solicitaron un término para presentar memorandos de derecho.

18. El 31 de octubre de 2025, la parte Recurrida presentó Moción en Cumplimiento de Orden.
[citas omitidas]

19. El 1 de noviembre de 2025, la parte Interventora presentó Memorando de Derecho en Cumplimiento de Orden.
[citas omitidas]

20. El 3 de noviembre de 2025, la parte Recurrente presentó Memorando de Derecho.
[citas omitidas]

21. El 8 de diciembre de 2025, el Oficial Examinador remitió su informe con Determinaciones de Hecho, Conclusiones de Derecho y su recomendación.

Ante ese cuadro, la DRA determinó que las variaciones, no proceden de forma automática puesto que se tiene que demostrar la

existencia de unas circunstancias que ameriten su implementación. El organismo administrativo atisbó que, el uso arbitrario o indiscriminado de las mismas tienen un efecto adverso en el proceso de planificación de Puerto Rico. La DRA concluyó que, tras un examen de toda la evidencia presentada, se demuestra que las variaciones propuestas son de gran intensidad y pueden afectar el uso y disfrute de la propiedad vecina. El ente administrativo determinó que, no se desprende que se haya presentado nueva evidencia pertinente y esencial relacionada con el caso, que cambie en raciocinio de la determinación objeto de revisión, tampoco se demostró la comisión de un error sustantivo o de procedimiento que convierta la decisión en una contraria a derecho o que afectara el interés público. Por último, enfatizó que, la recurrente demostró cómo el no conceder las variaciones solicitadas, limita el uso de la vivienda que tiene la estructura actualmente, conforme el distrito en el cual ubica. De modo que, la DRA determinó *No Ha Lugar* la solicitud de revisión administrativa.

Inconforme, el 8 de diciembre de 2025, la señora Nazario Cruz instó ante nos, un *Recurso de Revisión Administrativa* en el que coligó los siguientes señalamientos:

> Primer error: Erró la DRA-OGPe al aquilatar y apreciar la prueba desfilada llevándola a emitir una determinación contraria en derecho. Expresamente se plantea error craso en la apreciación de la prueba, por ser la misma insuficiente para sostener la determinación tomada.

> Segundo error: Erró la DRA-OGPe al obviar la Sección 4.5 de la Ley de Procedimiento Administrativo Uniforme que exige a la agencia que la determinación que tome esta basada de la totalidad de la evidencia que obre en el expediente.

> Tercer error: Erró la DRA-OGPe al obviar la reglamentación llamada a ejercer al momento de adjudicar la controversia dando suma importancia o dando peso desmedido a las alegaciones infundadas de supuestas servidumbres prediales, cuales limitaban el terreno y la estructura del recurrente a favor del interventor excediéndose en su discreción

En cumplimiento con nuestra *Resolución,* el 20 de febrero de 2026, la parte recurrente presentó la transcripción de la vista de

revisión administrativa celebrada el 29 de octubre de 2025. Asimismo, el 31 de marzo de 2026, se presentó el *Alegato Suplementario* de la parte recurrente.

Por otra parte, el 30 de abril de 2026, la parte recurrida presentó un *Alegato en Oposición* de la parte recurrida (interventora). Igualmente, el 4 de mayo de 2026, la OGPe radicó una *Oposición a recurso de revisión administrativa*.

Con el beneficio de la comparecencia de las partes, así como la transcripción de la prueba oral, procederemos a resolver el recurso ante nos.

**II.**

**A.**

Los organismos administrativos merecen la mayor deferencia posible de los tribunales. *Otero* v. *Toyota*, 163 DPR 716, 727 (2005). Tal deferencia se apoya en que las agencias administrativas tienen conocimiento experto y la experiencia especializada de los asuntos que le son encomendados. *Katiria's Café, v. Mun. de San Juan*, 2025 TSPR 33, 215 DPR ___ (2025); *Otero Rivera v. USAA Fed. Savs. Bank,* 214 DPR 473, 484 (2024); *Otero* v. *Toyota, supra*, pág. 728. Un principio establecido es que las determinaciones de las agencias administrativas tienen una presunción de legalidad y corrección en la que no deben intervenir los tribunales. *Rebollo* v. *Yiyi Motors*, 161 DPR 69, 78 (2004). Las determinaciones de hecho de las agencias tienen a su favor una "presunción de regularidad y corrección que debe ser respetada mientras la parte que las impugne no produzca evidencia suficiente para derrotarlas." *Henríquez v. Consejo Educación Superior*, 120 DPR 194, 210 (1987); *Rolón Martínez v. Supte. Policía,* 201 DPR 26, 35 (2018). Nuestro Tribunal Supremo ha expresado que los tribunales no deben intervenir o alterar las determinaciones de hechos de un organismo administrativo "si las mismas están

sostenidas por evidencia sustancial que surja del expediente administrativo considerado en su totalidad". *Otero Mercado v. Toyota de P.R. Corp.,* 163 DPR 716, 727-728 (2005); *Domingo v. Caguas Expressway Motors,* 148 DPR 387, 397 (1999). Las determinaciones de hecho serán sostenidas por el tribunal, si se basan en evidencia sustancial que no obra en el expediente administrativo. *Vázquez et al. v. DACo,* 216 DPR ___ (2025), 2025 TSPR 56. Ejercitando un criterio de razonabilidad y deferencia, los tribunales no deben intervenir o alterar las determinaciones de hecho realizadas por una agencia si están sostenidas por evidencia sustancial que surge del expediente. *Vázquez et al. v. DACo,* 2025 TSPR 56, 216 DPR ___ (2025); *Otero* v. *Toyota, supra,* pág. 728. Las determinaciones de hecho de las agencias tienen a su favor una presunción de regularidad y corrección que debe ser respetada mientras la parte que las impugne no demuestre evidencia suficiente que rebata la presunción de legalidad y corrección. *Katiria's Café v. Mun. de San Juan, supra.*

El máximo foro judicial ha definido evidencia sustancial como aquella "que una mente razonable podría aceptar como adecuada para sostener una conclusión". *Otero* v. *Toyota, supra,* pág. 728; *Ramírez v. Depto. de Salud,* 147 DPR 901, 905 (1999). La parte que impugne una determinación de hecho de una agencia debe convencer al foro apelativo que la determinación no fue basada en evidencia sustancial. *Otero v. Toyota, supra,* pág. 728. Para rebatir la determinación que cuestiona, debe demostrar que existe otra evidencia en el expediente que reduzca el valor probatorio. *Otero* v. *Toyota, supra,* pág. 728. Si la parte no demuestra en la revisión judicial otra evidencia sustancial que sostenga la determinación de la agencia, entonces no se alterará la determinación de la agencia. *Otero* v. *Toyota, supra,* pág. 728. La

parte que alegue ausencia de evidencia sustancial debe demostrar que existe:

> "[O]tra prueba en el récord que razonablemente reduzca o menoscabe el peso de tal evidencia, hasta el punto de que un tribunal no pueda, concienzudamente, concluir que la evidencia sea sustancial [...] hasta el punto de que se demuestre claramente que la decisión [del organismo administrativo] no está justificada por una evaluación justa del peso de la prueba" que tuvo ante su consideración. *Metropolitan S.E. v. A.R.P.E.*, 138 DPR 200, 213 (1995) citando a *Hilton Hotels v. Junta de Salario Mínimo*, 74 DPR 670, 686 (1983).

El máximo foro judicial ha definido evidencia sustancial como aquella "que una mente razonable podría aceptar como adecuada para sostener una conclusión". *Otero* v. *Toyota, supra,* pág. 728; *Ramírez v. Depto. de Salud*, 147 DPR 901, 905 (1999). La parte que impugne una determinación de hecho de una agencia debe convencer al foro apelativo que la determinación no fue basada en evidencia sustancial. *Otero v. Toyota, supra,* pág. 728. Para rebatir la determinación que cuestiona, debe demostrar que existe otra evidencia en el expediente que reduzca el valor probatorio. *Otero* v. *Toyota, supra,* pág. 728. Si la parte no demuestra en la revisión judicial otra evidencia sustancial que sostenga la determinación de la agencia, entonces no se alterará la determinación de la agencia. *Otero* v. *Toyota, supra*, pág. 728.

Por otro lado, respecto a las conclusiones de derecho, la *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico*, Ley Núm. 38-2017, señala que éstas pueden ser revisadas en todos sus aspectos. Sec. 4.5 de la LPAU, 3 LPRA sec. 9675. Las conclusiones de derecho serán revisables en todos sus aspectos por un tribunal. *Vázquez et al. v. DACo, supra.* La interpretación de la ley es una tarea que le corresponde a los tribunales y como corolario, los tribunales deben revisar las conclusiones de derecho en todos sus aspectos. *Vázquez v. Consejo de Titulares, supra.* Ello, como mecanismo interpretativo del poder

judicial. *Íd.* Ahora bien, lo anterior "no implica que los tribunales revisores tienen la libertad absoluta de descartar libremente las conclusiones e interpretaciones de la agencia". *Otero v. Toyota*, *supra*, pág. 729. Consecuentemente, cuando un tribunal llega a un resultado distinto al de la agencia, éste debe determinar si la divergencia es a consecuencia de un ejercicio razonable y fundamentado de la discreción administrativa, ya sea por la pericia, por consideraciones de política pública o en la apreciación de la prueba. *Íd.* Dicho de otro modo, "[e]l tribunal podrá sustituir el criterio de la agencia por el propio solo cuando no pueda hallar una base racional para explicar la decisión administrativa". *Íd.*

No obstante, la deferencia reconocida a la decisión de una agencia administrativa cede en las siguientes circunstancias: (1) la determinación administrativa no esté basada en evidencia sustancial; (2) el organismo administrativo haya errado en la aplicación o interpretación de las leyes o los reglamentos que se le ha encomendado administrar; (3) cuando el organismo administrativo actúe arbitraria, irrazonable o ilegalmente, al realizar determinaciones carentes de una base racional; o, (4) cuando la actuación administrativa lesione derechos constitucionales fundamentales. *Super Asphalt v. AFI y otros,* 206 DPR 803, 819 (2021); *Torres Rivera v. Policía de Puerto Rico,* 196 DPR 606, 628 (2016); *IFCO Recycling v. Aut. Desp. Sólidos*, 184 DPR 712, 744-745 (2012). Si el tribunal no se encuentra ante alguna de estas situaciones, aunque exista más de una interpretación razonable de los hechos, debe sostener la que seleccionó la agencia encargada. *Otero* v. *Toyota*, 163 DPR 716, 730 (2005). Al ejercer la función revisora, el tribunal está obligado a considerar la especialización y experiencia de la agencia sobre las cuestiones que tuvo ante sí. *Rebollo* v. *Yiyi Motors*, 161 DPR 69, 78 (2004). Por otro lado, las determinaciones de derecho, el tribunal tiene amplia

autonomía para revisarlas en todos sus aspectos. *Rebollo* v. *Yiyi Motors, supra*, pág. 77.

**B.**

La *Ley para la Reforma del Proceso de Permisos de Puerto Rico*, según enmendada, Ley Núm. 161 de 1 de diciembre de 2009 (Ley Núm. 161-2009), 23 LPRA sec. 9011, *et. seq*, se aprobó con los fines de establecer el marco legal y administrativo para regir las solicitudes para el otorgamiento, autorización o denegación de consultas y permisos en Puerto Rico, incluyendo, permisos para desarrollos de proyectos de construcción. 23 LPRA sec. 9011 *et seq.* Cónsono con lo anterior, en el Artículo 2.5 de la Ley Núm. 161-2009, *supra* sec. 9012d, se designa a la OGPe como la agencia autorizada para evaluar, conceder y denegar, entre otras cosas, las determinaciones finales para las consultas de construcción y los permisos relacionados con el desarrollo y uso de los terrenos en nuestra jurisdicción. Así, mediante el Artículo 6.1 del citado estatuto, "[s]e crea la Junta Adjudicativa de la Oficina de Gerencia de Permisos, como organismo adscrito a dicha Oficina, delegándosele la responsabilidad de evaluar y adjudicar solicitudes de carácter discrecional". 23 LPRA sec. 9016e. Por su parte, el Artículo 6.3, de la referida Ley, establece lo siguiente:

> La Junta Adjudicativa tendrá los siguientes deberes, facultades y funciones generales, además de aquéllos conferidos por esta Ley, o por cualquier otra ley:
> a) evaluar y adjudicar solicitudes de carácter discrecional;
> b) evaluar y adjudicar asuntos en áreas no calificadas. En estos casos las determinaciones no establecerán una política general o definirán política pública, quedando esta responsabilidad en jurisdicción exclusiva de la Junta de Planificación;
> c) celebrar vistas;
> d) como parte de sus determinaciones, podrá hacer modificaciones o imponer cualquier condición necesaria para la aprobación de la solicitud;
> e) descargar cualquier otra función que se le delegue mediante esta Ley. 23 LPRA sec. 9016g.

De igual forma, y al amparo de la Ley Núm. 161-2009, *supra,* se crea el *Reglamento Conjunto para la Evaluación y Expedición de Permisos Relacionados al Desarrollo, Uso de Terrenos y Operación de*

*Negocios* (Reglamento Conjunto) del 16 de junio de 2023. A tales efectos, el Reglamento Conjunto, *supra,* define la <u>consulta de construcción</u> como el "[t]rámite ante la OGPe, sobre un proyecto de uso ministerial, pero que conlleva variaciones a los parámetros de construcción del distrito donde ubica, el cual será adjudicado por la Junta Adjudicativa o Municipio Autónomo con Jerarquía de la I a la III". Valga aclarar, la consulta de construcción es un trámite discrecional que conlleva variaciones a los parámetros de construcción.

A esos efectos, el Artículo 1.5 de la Ley Núm. 161-2009, *supra,* contempla los conceptos "discrecional", y "variación en construcción", y los define como:

26) Discrecional- Describe una determinación que conlleva juicio subjetivo por parte de la Junta Adjudicativa, del Secretario Auxiliar o un Municipio Autónomo con Jerarquía de la I a la V sobre la forma en que se conduce o propone una actividad o acción. <u>Éstos utilizan su conocimiento especializado, discreción y juicio para llegar a su determinación, ya que esta determinación considera otros asuntos además del uso de estándares fijos o medidas objetivas</u>. El Secretario Auxiliar o el Municipio Autónomo con Jerarquía de la I a la V, puede utilizar juicios subjetivos discrecionales al decidir si una actividad debe ser realizada o cómo debe realizarse. [...]

94) Variación en construcción- Autorización concedida por el Secretario Auxiliar para la construcción de una estructura o parte de ésta, que no satisfaga los reglamentos, Planes de Ordenación y códigos establecidos, en cuanto a parámetros de construcción y densidad poblacional, pero que, debido a la condición del solar, la ubicación especial o el uso particular, <u>confronte una dificultad práctica que amerite por excepción una consideración especial, siempre que no exista perjuicio a las propiedades vecinas</u>. Se podrá conceder una variación en los parámetros de construcción, que nunca podrá conllevar un cambio en densidad e intensidad, tampoco se considerará una recalificación. La misma es permisible siempre y cuando el uso propuesto sea compatible con el contemplado en el tipo de distrito donde ubica y cumpla con los requisitos aplicables a este tipo de variación. 23 L.P.R.A. sec. 9011.

Asimismo, la Regla 2.2.2 del Reglamento Conjunto, *supra,* dispone lo siguiente sobre los trámites de carácter discrecional:

a. Los asuntos de naturaleza discrecional serán atendidos por la Junta Adjudicativa, el Secretario Auxiliar de la OGPe o los Municipios Autónomos con Jerarquía de la I a la III.

b. La Junta Adjudicativa, el Secretario Auxiliar de la OGPe o los Municipios Autónomos con Jerarquía de la I a la III, en

todos los casos, tomarán su determinación final considerando la totalidad del expediente.

c. Estos prepararán, emitirán y notificarán la resolución en la cual incluya las determinaciones de hechos y conclusiones de derecho que fundamenten el acuerdo tomado, identificando a las personas que se consideran partes en el procedimiento.

d. La resolución del Secretario Auxiliar de OGPe advertirá a cualquier parte afectada de su derecho a solicitar una revisión administrativa ante la División de Revisiones Administrativas de la OGPe o revisión judicial de decisión administrativa ante el Tribunal de Apelaciones.

e. La resolución de la Junta Adjudicativa, se advertirá a cualquier parte afectada de su derecho a solicitar una revisión administrativa ante la División de Revisiones Administrativas de la OGPe o revisión judicial de decisión administrativa ante el Tribunal de Apelaciones.

f. La resolución de los Municipio Autónomo con Jerarquía de la I a la III advertirá a cualquier parte afectada de su derecho a solicitar una revisión ante la División de Revisiones Administrativas de la OGPe o revisión judicial de decisión administrativa ante el Tribunal de Apelaciones.

Ahora bien, el proyecto en controversia ubica en un distrito R-I, y conlleva variaciones a los parámetros de construcción relacionados con los patios delantero y posterior de la propiedad, así como para marquesinas en los laterales derecho e izquierdo. En cuanto a las variaciones, la Regla 6.3.2.1 del Reglamento Conjunto, *supra*, rige que:

a. La variación en construcción, lotificación u otras no van dirigidas a alterar el uso permitido en el distrito, sino a dispensar al propietario del cumplimiento de uno o más de los requisitos que establece el Reglamento Conjunto, para la zona o distrito de calificación donde ubica o radica el inmueble o propiedad.

b. La parte interesada que solicita una variación según antes señalado, al contrario de aquel que invoca la variación en uso, desea seguir utilizando la propiedad para el uso permitido por la reglamentación, pero necesita que se le exima de uno de los requisitos establecidos en el distrito de calificación para asegurar la viabilidad del uso permitido.

c. Esta disposición reglamentaria aplicará de igual manera en las Áreas de Planificación Especial alrededor de Puerto Rico.

Además, en la Sección 6.3.2.3 del Reglamento Conjunto, *supra*, sobre las condiciones al otorgar variaciones, se dispone:

a. El Secretario Auxiliar de la OGPe, los Municipios Autónomos con Jerarquía de la I a la III, a los cuales se le haya delegado dicha facultad por medio del Convenio de Transferencia, autorizará variación en construcción, lotificación u otras para los usos que tolera el distrito

tomando en consideración, entre otros, los siguientes factores:

1. El solar tenga una condición particular que no permite que se cumpla con las disposiciones de este Reglamento.

2. El solar tenga una ubicación especial o el uso particular confronta una dificultad práctica y amerita una consideración especial.

3. La variación solicitada no perjudica propiedades vecinas, la disponibilidad de infraestructura y el ambiente del vecindario.

4. No se afecte el uso agrícola, la productividad agrícola de los terrenos, los recursos naturales, históricos o culturales existentes, si alguno.

5. Para variar los parámetros de construcción sobre densidad e intensidad, el uso propuesto deberá ser uno contemplado en el distrito en que ubica.

6. La magnitud de la variación es la necesaria para asegurar la viabilidad del uso permitido y no es viable considerar otras alternativas para salvar el problema presentado.

b. En las Áreas de Planificación Especial, el Secretario Auxiliar de la OGPe especificará la naturaleza y extensión de las variaciones en construcción u otras variaciones y también prescribirá aquellas condiciones que a su juicio son necesarias para asegurar el cumplimiento de los criterios que se establecen en esta Sección.

c. Las variaciones autorizadas quedarán sujetas al cumplimiento de las condiciones que se establezcan y a las demás disposiciones de ésta o de cualquier otra reglamentación aplicable.

d. El incumplimiento de cualquiera de dichas condiciones constituirá una violación a este Reglamento y podría constituir base suficiente para la revocación de la variación en todas sus partes.

Conforme surge, en la Sección 6.3.2.4 respecto a los criterios para autorizar variaciones se expresa que:

No podrá autorizarse una variación en construcción, lotificación u otras, en todo o en parte, a menos que:

a. Que la variación sea necesaria para la preservación y el disfrute de un derecho de propiedad y se demuestre que la variación aliviará un prejuicio claramente demostrable.

b. Que la autorización de tal variación no afectará adversamente el disfrute y valor de las pertenencias cercanas en el uso presente y para cualquier otro uso futuro permitido.

c. Que el peticionario, a su vez, está en disposición de aceptar las condiciones y requisitos adicionales a los requisitos reglamentarios que el Secretario Auxiliar de la OGPe o Municipio Autónomo con Jerarquía de la I a la III le imponga para beneficio o protección del interés público.

d. Solicitar comentarios a la Unidad de Hidrogeología de la JP en áreas propensas a inundaciones o a deslizamientos de terrenos.

e. No afecte la integridad ecológica de la Reserva Agrícola, Natural, Áreas de Planificación Especial o se ocasione peligro a los recursos naturales, históricos, culturales o agrícolas existentes.

Dentro del marco jurídico antes enunciado, la Asamblea Legislativa estableció la presunción de corrección y legalidad de los permisos expedidos por la OGPe. 23 LPRA sec. 9019i. Asimismo, la referida disposición legal estableció un esquema de revisión de las determinaciones y permisos finales expedidos. En particular, toda resolución final de la OGPe puede ser objeto de revisión ante la DRA dentro de un término jurisdiccional de veinte (20) días. *Íd.*

En cuanto a los criterios que debe considerar la DRA al evaluar los recursos de revisión que acoge, la Sección 11.1.2.7 del Reglamento Conjunto, *supra*, dispone:

> Cuando se determine entrar a considerar una revisión administrativa, la misma será evaluada de acuerdo con los siguientes criterios:
>
> a. El descubrimiento de nueva evidencia pertinente y esencial relacionada con el caso, cuya admisibilidad haga más probable una determinación contraria a la tomada y que a pesar de una diligencia razonable no pudo haber sido descubierta antes de la determinación de la OGPe, la Junta Adjudicativa, Profesional Autorizado, Municipio Autónomo con Jerarquía de la I a la III.
> b. La comisión de un error sustantivo o de procedimiento que convierta la decisión en una contraria a derecho.
> c. La necesidad de corregir la decisión de forma que el interés público quede mejor protegido.

Obsérvese, las disposiciones reglamentarias antes citadas son cónsonas con el Artículo 11.9la de la Ley 161-2009, *supra*, que dispone:

> La División de Revisiones Administrativas podrá realizar vistas en las cuales podrá recibir prueba adicional que sustente las alegaciones de las partes y le permita adjudicar el caso. Las actuaciones o determinaciones finales objeto de revisión, serán confirmadas si las mismas se sostienen al ser considerado el contenido del expediente administrativo del ente que la adjudicó en primera instancia y al considerar la prueba admitida ante la División de Revisiones Administrativas. 23 LPRA sec. 9021u.

**III.**

En el caso de autos, la señora Nazario Cruz argumentó, que la OGPe erró en determinar contrario a la prueba presentada y, por tanto, emitir un dictamen contrario en derecho. En síntesis, alegó que procede que se revoque la determinación emitida por el organismo administrativo y se autoricen las variaciones solicitadas, toda vez que, dichas variaciones son justificadas y, se ajustaron a la exigencia reglamentaria mediante prueba que consta en el expediente. Además, arguyó que, la variación cumple con los criterios de la OGPe tras configurarse las circunstancias que permite la variación construida por la recurrente. Asimismo, adujo que, no existe el problema alegado por el señor Santana sobre el desagüe de las aguas pluviales. Consecuentemente, la variación solicitada no perjudica propiedades vecinas, la disponibilidad de infraestructura y el ambiente del vecindario, tampoco inciden en la densidad o intensidad y no modifica en forma alguna el uso permitido, asegurando la viabilidad de este.

Por los señalamientos de error estar relacionados, procederemos a discutirlos en conjunto.

Harto es conocido que, debemos brindarle deferencia a las determinaciones de hechos que esbozan las agencias administrativas. En reiteradas ocasiones, este Tribunal ha resuelto que no intervendremos en las determinaciones de hechos de una agencia, salvo que la determinación administrativa no esté basada en evidencia sustancial; el ente administrativo erró en la aplicación o interpretación de las leyes o reglamentos que se le ha encomendado administrar; el organismo administrativo actuó arbitraria, irrazonable o ilegalmente, realizando determinaciones carentes de una base racional. De lo contrario, debemos abstenernos en modificar las determinaciones de hechos que

formule la agencia toda vez que, el foro administrativo evaluó la prueba desfilada ante su consideración.

Conforme a las normas jurídicas, el Reglamento Conjunto, *supra*, dispone que una consulta de construcción es un trámite discrecional que conlleva variaciones a los parámetros de construcción. Para evaluar dicha solicitud, conforme al trámite discrecional, la agencia administrativa debe emplear su conocimiento especializado, discreción y juicio para llegar a su determinación, debido a que dicha determinación considera otros asuntos, en adición al uso de estándares fijos o medidas objetivas. Así, la Ley Núm. 161-2009, *supra*, estatuye que una variación en construcción procede cuando la construcción de una estructura o parte de ésta no satisface los reglamentos, Planes de Ordenación y códigos establecidos, la cual, ante la condición del solar, la ubicación especial o el uso particular, confronte una dificultad práctica que amerite por excepción una consideración especial, siempre que no exista perjuicio a las propiedades vecinas. En esa línea, el Tribunal Supremo de Puerto Rico ha expresado que las variaciones son una válvula de escape dentro del rígido ordenamiento de zonificación en Puerto Rico. *Asoc. Res. Park Side, Inc. v. J.P.*, 139 DPR 349, 354 (1995). "La variación tiene el propósito de atenuar el rigor reglamentario permitiendo el uso prohibido cuando se demuestra que, debido a las circunstancias especiales, la aplicación de las restricciones puede resultar irrazonable y ocasionar perjuicios al dueño". *A.R.P.E. v. J.A.C.L.*, 124 DPR 858, 861-862 (1989). De modo que, se reconocen mecanismos para evitar que una reglamentación existente se convierta en un instrumento inflexible e incapaz de amoldarse a situaciones extraordinarias". *T-JAC, Inc. v. Caguas Centrum Limited*, 148 DPR 70, 82 (1999).

Luego de un examen minucioso y en correcta práctica apelativa concurrimos con la determinación de la OGPe.

Ciertamente, el proyecto en controversia ubica en un distrito Residencial Intermedio (R-I) y, por tanto, las variaciones de los parámetros de construcción deben ser a tenor con las reglamentación y estatutos aplicables de dicho distrito. Por un lado, la recurrente justificó la altura en exceso del techo de la terraza, por ser en metal, el sol del día calentaba demasiado subiendo la temperatura, siendo incómodo permanecer en dicha terraza. De igual forma, las variaciones en la extensión mayor en ambas marquesinas procedían según la recurrente, en función a los usos del *laundry*, cuarto de desahogo, un medio baño, y mayor área de estacionamientos dentro de su propiedad, por la cantidad de vehículos que poseen.

Nos resulta forzoso concluir que, el organismo administrativo no erró en su determinación dado que la señora Nazario Cruz no demostró con suficiente evidencia que confronte una dificultad práctica en su propiedad que amerite por excepción una consideración especial. Destacamos que, durante la vista administrativa, el ingeniero contratado por la señora Nazario Cruz, no indagó si las variaciones en las propiedades vecinales son a tenor con los estatutos aplicables.[46] Al respecto, la recurrente no puede escudarse en que sus colindantes realizaron variaciones similares toda vez que, desconoce sobre la legalidad de dichas construcciones. A esos efectos, esta Curia resalta que, las variaciones en la propiedad deben ser cimentadas en la reglamentación aplicable y no bajo la premisa de "si afecta o no a las propiedades colindantes".

Reiteramos que, tras examinar el contenido de las vistas y el expediente administrativo, las determinaciones de hechos fueron en ausencia de pasión, prejuicio o parcialidad. Así pues, concluimos que la presunción de corrección que permea en la determinación del organismo administrativo no fue rebatida por la recurrente, por lo

---

[46] TPO, pág. 97; líneas 7-43.

que no se justifica revocar la determinación de la OGPe. La estructura objeto de la solicitud contiene construcciones que se exceden del máximo permitido en los parámetros de diseño para un distrito Residencial Intermedio (R-I). Ante este cuadro, la señora Nazario Cruz no justificó con evidencia pertinente la procedencia o las circunstancias particulares que ameritaban que el ente administrativo autorizara las variaciones en su propiedad. Como vemos, no se configuraron las excepciones por las que la OGPe podía autorizar la variación llevada a cabo por la recurrente. Igualmente, tampoco la señora Nazario Cruz logró rebatir ante nos la determinación de la OGPe dado que construyó sin los permisos correspondiente una variación no autorizada en el distrito Residencial Intermedio (R-I). Atisbamos que, tanto este Tribunal de Apelaciones como el organismo administrativo resuelve que, ciertamente la variación produjo el efecto de que el agua desagüe en la propiedad del señor Santana. Conforme la normativa aplicable, la consulta de construcción es un trámite discrecional y las variaciones en construcción no son automáticas, dado a que se tiene que demostrar la existencia de unas circunstancias que ameriten su implementación, circunstancia que no debe ser autoinfligida.

A la luz de los fundamentos esbozados, la construcción objeto de la controversia no cumple con los parámetros establecidos. Además, la construcción fue ejecutada sin los permisos correspondientes del Estado. Así pues, en ausencia de evidencia que acredite circunstancias extraordinarias que ameriten autorizar la variación de la propiedad de la recurrente, confirmamos la *Resolución* recurrida.

**IV.**

Por los fundamentos que anteceden, confirmamos la *Resolución* recurrida.

Notifíquese.

Lo acuerda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.



Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones